**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DANIELLE REMILLARD, *also known as* DANIELLE PALMER,

Plaintiff,

No. 1:26-CV-1253 (MAD/PJE)

v.

RENSSELAER CITY SCHOOL DISTRICT; JOSEPHKARDASH, *individually*; JENNIFER HAGGARTY, Individually; BRAD ENDRES, Individually; JILLIAN HINES, individually; and HEATHER STASZAK, Individually,

Defendants.

---

| **APPEARANCES**: | **OF COUNSEL**: |
|---|---|
| Tuckner, Sipser, Weinstock & Sipser<br>535 Fifth Ave.<br>4th Floor<br>New York, New York 10017<br>Attorneys for the plaintiffs | WILLIAM J. SIPSER. ESQ. |
| Girvin & Ferlazzo, P.C.<br>20 Corporate Woods Boulevard<br>Albany, New York 12211<br>Attorneys for the defendants | SCOTT P. QUESNEL, ESQ. |

**HON. PAUL J. EVANGELISTA**
**UNITED STATES MAGISTRATE JUDGE**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Presently before the Court is plaintiff's motion for leave to serve a late notice of claim concerning New York State Human Rights Law ("NYSHRL") causes of action pleaded against the District and individual defendants. *See* Dkt. No. 2. Defendants

oppose solely on threshold timeliness grounds under New York Education Law §§ 3813(2-a) and (2-b). *See* Dkt. No. 24. For the reasons that follow, plaintiff's request to serve a late notice of claim is granted.

## II. BACKGROUND

Plaintiff began working for the Rensselaer City School District as Director of Pupil Personnel Services in September 2024. *See* Dkt. No. 1 ("Compl.") ¶2). She alleges that during her employment she experienced workplace harassment, sex discrimination, disability discrimination, and retaliation. *See id*. ¶1. Specifically, plaintiff maintains that District employees circulated false and sexually-degrading rumors about her, District officials failed to intervene, and male employees accused of misconduct received more favorable treatment. *See id*. ¶¶21-35.

Plaintiff further alleges that she developed a neurological condition causing double vision, which impaired her ability to commute safely. *See Compl.* ¶37. She requested permission to work remotely as a reasonable accommodation. *See id.* ¶ 55. According to plaintiff, the District refused to accommodate her disability, pressured her to resign, and ultimately terminated her employment for discriminatory and retaliatory reasons. *See id.* ¶¶*56, 57.* The chronology of the material events relevant to this motion is as follows.

On August 28, 2024, plaintiff allegedly informed defendant Superintendent Kardash ("Kardash") of her domestic violence survivor status. *See* Dkt. No. 1 ¶23. In September 2024, plaintiff alleges the sex-based rumors and workplace harassment began. *See id*. ¶25. In December 2024, plaintiff learned that Kardash had known about the rumors for several months but failed to inform her of them. *See id.* ¶ 29. Between

January and March 2025, plaintiff alleges she developed medical problems, including migraines and double vision, impacting her ability to commute. *See id.* ¶¶36,37. On March 4, 2025, Kardash allegedly told plaintiff she should seek other employment because she would be terminated. *See id.* ¶42. On April 1, 2025, Kardash again allegedly urged plaintiff to resign. *See id.* ¶47. On May 27, 2025, plaintiff formally requested a remote-work accommodation. *See id.* ¶55. Kardash responded to the request by requesting additional medical documentation and proposing a meeting regarding accommodations. *See id. ¶56.* On June 4, 2025, plaintiff's attorney sent the District a detailed "Notice of Claims and Demand for Immediate Action." *See id. ¶58.* On June 17, 2025, the District allegedly denied remote work and offered thirty-days of paid leave instead. *See id.* ¶56. On June 18, 2025, the Board of Education voted to discontinue plaintiff's probationary appointment. *See id.* ¶59. That same day, plaintiff's termination became effective. *See id.* On January 15, 2026, plaintiff filed an EEOC charge. *See id.* ¶ 20. On June 17, 2026, plaintiff commenced this action and sought leave to serve a late Notice of Claim regarding her NYSHRL claims. *See* Dkt. Nos. 1, 2.

As relevant to the current motion, plaintiff alleges five causes of action under the NYSHRL against defendants. Specifically, plaintiff alleges (1) sex discrimination and hostile work environment (fourth cause of action); (2) retaliation (Fifth Cause of Action); (3) disability discrimination and failure to accommodate (Sixth Cause of Action); (4) discrimination based on domestic violence victim status (Seventh Cause of action); and (5) aiding and abetting discrimination (Eighth Cause of Action). *See generally* Dkt. No. 1

Plaintiff's motion seeks permission to serve a late notice of claim as to her NYSHRL claims. *See generally* Dkt. No. 2. She acknowledges that Education Law §

3813(1) generally requires notice of claim within three months after accrual but argues that § 3813(2-a) permits this Court to grant an extension based on the circumstances presented. Specifically, she contends that the District acquired actual knowledge of the essential facts constituting the claims, that the District would not suffer any prejudice from service of a late notice of claim, and that the equities favor permitting late service. *See* Dkt. No. 2 at 5-9.

In their response, defendants mostly avoid disputing plaintiff's factual assertions concerning actual knowledge, prejudice, and equitable considerations. *See* Dkt. No. 24 at 5. Instead, they argue that these factors are irrelevant because plaintiff sought leave to serve a late notice after the applicable statute of limitations period expired. Specifically, they assert that the Court lacks authority to grant the application because the claims accrued more than one year before the June 17, 2026, filing date. *See id.* at 7.

In her reply, plaintiff argues that her application is timely as to each claim, and because defendants explicitly declined to dispute actual knowledge and lack of prejudice, the Court should grant leave to serve late Notice of Claim. *See* Dkt. No. 25 at 1-8.

## III. LEGAL STANDARD

28 U.S.C.A. § 1367 provides, "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. It follows that the district court may grant leave to file a

late notice of claim under Education Law § 3813(2-a) in a case in which it exercises supplemental jurisdiction. *See EUA Cogenex Corp. v. N. Rockland Cent. Sch. Dist.*, 124 F. Supp. 2d 861, 864 (S.D.N.Y. 2000) (holding that federal courts have authority to grant leave to serve a late notice of claim under Education Law § 3813(2-a) because the statute does not restrict such applications to state courts). However, it remains unresolved whether a federal court may exercise subject matter jurisdiction over requests to file a late notice of claim against a school district where the underlying cause of action sounds in tort. *See Flaherty v. Massapequa Public Schools*, 752 F. Supp. 2d 286, 292 (E.D.N.Y. 2010) (citation omitted) ("[T]here is some dispute as to whether the plaintiff's notice of claim requirements are governed by New York Education Law § 3813, New York Municipal Law § 50-e, or both. This is relevant because, while Section 50-e arguably permits only state courts to grant leave to file a late notice of claim, Section 3813 permits any "court"—including this Court—to grant leave to file a late notice."); *Leface v. Eastern Suffolk BOCES*, No. 2:18-cv-1314 (ADS)(AKT), 2020 WL 2489774, at *7 (E.D.N.Y. May 14, 2020) (holding that, although the plaintiff sought leave to serve a late notice of claim under New York Education Law § 3813, since the underlying cause of action against the school district was for fraud, the claim sounded in tort, General Municipal Law § 50-e governed the request, and the federal court lacked jurisdiction to grant the plaintiff's request.). Because it is well settled that a claim brought pursuant to the NYSHRL is "not categorized as a tort for notice of claim purposes," this Court may exercise subject matter jurisdiction over plaintiff's request. *See Flaherty*, 752 F. Supp. 2d at 292 (quoting *Picciano V. Nassau Cnty. Civ. Serv. Comm'n*, 736 N.Y.S.2d 55, 60 (N.Y. App. Div. 2001)).

Ordinarily, Education Law § 3813(1) requires written claim notice within three months of accrual for covered claims/defendants. *See* N.Y. EDUC. LAW § 3813(1) (McKinney 2026).

> A claimant who fails to timely notify the governing body within the three months, pursuant to Education Law § 3813(1), may apply for an extension. Education Law § 3813(2-a) provides that "[u]pon application, the court, in its discretion, may extend the time to serve a notice of claim. The extension shall not exceed the time limited for the commencement of an action by the claimant against any district or any such school." The time limited for commencement of such action is provided for in Education Law § 3813(2–b) [.] . .

*Amorosi v. S. Colonie Indep. Cent. Sch. Dist.*, 9 N.Y.3d 367, 370 (2007) (citing N.Y. Educ. Law § 3813(2-a)). "Education Law § 3813(2-b) provides for a one-year statute of limitations." *Amorosi*, 9 N.Y.3d at 370-375 (holding that the one-year statute of limitations under Education Law § 3813(2-b) applies to NYSHRL employment discrimination claims against school districts and that courts lack discretion to permit late service of a notice of claim after the limitations period expires). "If the applicable statute of limitations has expired, the court lacks jurisdiction to grant an extension." *Bucalo v. E. Hampton Union Free Sch. Dist.*, 351 F. Supp. 2d 33, 35 (E.D.N.Y. 2005) (citing *Kingsley Arms, Inc. v. Copake-Taconic Hills Cent. Sch. Dist.,* 9 A.D.3d 696, 780 N.Y.S.2d 805, 807 (N.Y. App. Div. 2004)); *Stevens v. Bd. of Educ. of McGraw Cent. Sch. Dist.,* 261 A.D.2d 698, 699, 689 N.Y.S.2d 730, 730 (N.Y. App. Div. 1999).

If the extension is sought before the expiration of the one-year statute of limitations, the court,

> in deciding whether to grant leave to serve a late notice of claim, a court must consider: (1) whether the plaintiff has demonstrated a reasonable excuse for her failure to serve a timely notice of claim; (2) whether the school district acquired actual knowledge of the essential facts of the claim within 90 days or a reasonable time thereafter; (3) whether the petitioner

> was an infant, or was mentally or physically incapacitated, and (4) whether the delay would substantially prejudice the public corporation in maintaining its defense on the merits.

*Bucalo,* 351 F. Supp. 2d at 36 (citing N.Y. Educ Law § 3813(2–b); *John Doe v. Goshen Cent. Sch. Dist.*, 787 N.Y.S.2d 75 (N.Y. App. Div. 2004)); *Riordan v. East Rochester Schools,* 291 A.D.2d 922, 923, 737 N.Y.S.2d 202, 203 (N.Y. App. Div. 2002); *Lopez v. Hicksville Pub. Sch. Dist.,* 734 N.Y.S.2d 878, 878 (N.Y. App. Div. 2001)).

## IV. DISCUSSION

### A. The Court Has Authority to Consider Plaintiff's Motion

This Court has supplemental jurisdiction over plaintiff's NYSHRL claims and, thus, the authority to grant or deny leave to serve a late notice of claim. *See* 28 U.S.C. §1367(a) (providing federal district courts with supplemental jurisdiction over state-law claims that are so related to claims within the courts' original jurisdiction that they form part of the same case or controversy). As it is well settled that a claim brought pursuant to the NYSHRL is "not categorized as a tort for notice of claim purposes," this Court may exercise subject matter jurisdiction over plaintiff's request. *See Flaherty*, 752 F. Supp. 2d at 292 (quoting *Picciano*, 736 N.Y.S.2d at 60 (N.Y. App. Div. 2001)); *EUA Cogenex Corp.*, 124 F. Supp. 2d at 864 (holding federal courts have authority to grant leave to serve a late notice of claim in some matters, including contract-based disputes (citing *Courtemanche v. Enlarged City Sch. Dist. of City of Middletown*, 686 F. Supp. 1025, 1044 (S.D.N.Y. 1988) (additional citation omitted))

### B. Timeliness of Plaintiff's Motion

#### 1. Termination-Based Claims[1]

[1] For purposes of this analysis, the Court considers plaintiff's termination-based claims to include her claims of sex discrimination (Fourth Cause of Action), retaliation (Fifth Cause of Action), disability

The parties disagree on the accrual date of plaintiff's termination-based claims. Defendants argue that plaintiff's termination claims accrued in March or April 2025, when Superintendent Kardash allegedly informed her that she would be terminated and repeatedly urged her to resign. Plaintiff responds that those statements did not communicate a final and unequivocal decision because the Board of Education, not Superintendent Kardash, had the statutory authority to terminate her probationary appointment. The undersigned agrees with plaintiff.

Superintendent Kardash's statements in March and April 2025 did not constitute final and unequivocal notice of plaintiff's termination. Although a discriminatory termination claim generally accrues when the challenged employment decision is made and communicated to the employee, rather than when the termination becomes effective, the decision communicated must be final. *See Delaware State Coll. v. Ricks*, 449 U.S. 250, 258, 261-62 (1980) (holding that the limitations period commenced when the employer's decision to deny tenure was made and communicated to the employee); *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (holding that the limitations period commenced when employees received notice that a final decision had been made to terminate their appointments).

Here, on March 4, 2025, Kardash informed plaintiff that she "should look for other employment because she was going to be terminated" and urged her to resign. *See* Dkt. No. 1 at 10, 11 (Compl. ¶¶ 42, 44). Kardash again pressed plaintiff to resign on

---

discrimination (Sixth Cause of Action), and discrimination based on domestic violence victim status (Seventh Cause of Action), to the extent those claims arise from the allegedly discriminatory decision to terminate her employment. The Court also considers plaintiff's aiding-and-abetting claim (Eighth Cause of Action) insofar as it concerns the individual defendants' alleged participation in that decision. The Court addresses plaintiff's hostile work environment claim (Fourth Cause of Action) and failure-to-accommodate claim (Sixth Cause of Action) separately below.

April 1, 2025. *See id.* at 11 (Compl. ¶ 47). Unlike the communications at issue in *Ricks* and *Chardon*, Kardash's statements did not convey that the final decisionmaker had already made a final termination decision. Rather, as plaintiff opines, the statements were prospective in nature, advising plaintiff of an anticipated termination while simultaneously seeking her voluntary resignation. Indeed, Kardash's repeated efforts to obtain plaintiff's resignation suggest that termination remained a contemplated outcome rather than a completed determination. Importantly, the person who communicated this potentiality, Kardash, lacked the statutory authority to make the final decision to terminate plaintiff's probationary appointment. As the Supreme Court of the United States recognized in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986), "whether an official had final policymaking authority is a question of state law." Under New York Education Law § 3012(1)(b)(ii), the services of a probationary school administrator may be discontinued, upon the recommendation of the "superintendent of schools," only by a "majority vote of the board of education" or "trustees of a common school district." N.Y. Educ. Law § 3012(1)(b)(ii) (McKinney's 2026); *Simpson v. Enlarged City Sch. Dist. of Newburgh*, No. 05 Civ. 5144 (GAY), 2007 WL 2789512, at *6 (S.D.N.Y. Sept. 26, 2007) (recognizing that the decision to terminate a probationary teacher rests with the board of education upon the superintendent's recommendation).

Thus, although Kardash could recommend plaintiff's termination and communicate his intention to seek that result, he could not independently make the final termination decision. Unlike *Ricks*, where the institution's board had already formally voted to deny tenure before communicating its decision, there is no indication here that the board of education had made a final determination to terminate plaintiff when

Kardash communicated his March and April statements. *See generally Cohen v. Bd. of Educ. of East Ramapo Cent. Sch. Dist.*, 536 F. Supp. 486, 492-93 (S.D.N.Y. 1982) (distinguishing an administrator's informal, preliminary determination of a notifying a teacher of their termination from the board of education's authoritative action, clarifying that the challenged claims accrued only upon the plaintiff's notification of board's "final" decision).

Accordingly, Kardash's statements did not constitute notice of a final and unequivocal employment decision sufficient to trigger accrual of plaintiff's termination-based claims. Rather, plaintiff received such notice on June 18, 2025, when the Board of Education voted to discontinue her probationary appointment and communicated its decision to her. As plaintiff filed her motion for leave to serve a late notice of claim on June 17, 2026, her application was timely with respect to the NYSHRL claims arising from that termination.

**2. Timeliness of Plaintiff's Hostile Work Environment Claim**

Although plaintiff's Fourth Cause of Action asserts both sex discrimination and hostile work environment theories, the Court's determination that her termination-based discrimination claims accrued on June 18, 2025, does not necessarily resolve the timeliness of her hostile work environment claim. Unlike a discriminatory termination claim, which arises from a discrete employment decision, a hostile work environment claim consists of a series of related acts that collectively constitute an unlawful employment practice. *See King v. Aramark Servs.*, 96 F.4th 546, 561 (2d Cir. 2024) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-18, 117 (2002) ("Because a constellation of events over time can collectively give rise to a hostile

environment claim, if 'an act contributing to the [hostile environment] occurs within the filing period' the hostile work environment claim is timely, and a factfinder can hold a defendant liable for 'the entire time period of the hostile environment,' including the period falling outside of the limitations period.")). Accordingly, the Court must determine whether plaintiff's June 18, 2025, termination constituted part of the same course of discriminatory conduct underlying her hostile work environment claim, such that the continuing violation doctrine renders the claim timely. *See King*, 96 F.4th at 561. The Court concludes that it did.

Plaintiff's termination on June 18, 2025, constituted the final act in the alleged continuing course of discriminatory conduct underlying her hostile work environment claim. Although termination ordinarily constitutes a discrete discriminatory act, the Second Circuit has recognized that termination may also contribute to a hostile work environment where it forms part of the same pattern of discriminatory conduct. *See King,* 96 F.4th at 561-62 (recognizing that a termination occurring within the limitations period may render hostile work environment claim timely if termination forms part of same course of discriminatory conduct); *see also Olivieri v. Stifel, Nicolaus & Co.*, 112 F.4th 74, 88-89 (2d Cir. 2024) (holding that hostile work environment claims under Title VII and the NYSHRL are subject to the continuing violation doctrine and may accrue multiple times as successive discriminatory acts contribute to the same unlawful employment practice). Under the continuing violation doctrine, a claim will be considered timely as long as one of the alleged acts occurred within the limitations period and the other acts complained of are part of the same unlawful practice, even if

they occurred outside the limitation period. *See Matter of Lozada v. Hook & Ladder Co. No. 1,* 54 N.Y.S. 3d 688, 151 A.D.3d 860, 861 (N.Y. App. Div. 2017).

Plaintiff alleges that she was subjected to a continuous campaign of sex-based harassment beginning shortly after her employment commenced in September 2024, including the circulation of sexually-degrading rumors, the District's failure to intervene despite knowledge of the harassment, disparate treatment compared to male employees, and District officials' efforts to remove her from employment. Plaintiff further alleges that Superintendent Kardash relied upon the hostile perceptions of her fostered by that campaign, solicited negative evaluations from subordinates to justify her removal, and ultimately recommended her termination. The allegedly pretextual performance evaluation, the board of education's June 18, 2025, decision to discontinue plaintiff's probationary appointment, and the communication of that decision on the same date may reasonably be viewed as the culmination of the same discriminatory course of conduct rather than an unrelated employment decision. *See King*, 96 F.4th at 561-63.

The Court further concludes that the continuing violation doctrine applies in determining whether plaintiff's application for leave to serve a late notice of claim is timely under Education Law § 3813(2-a) and (2-b). Courts within this Circuit have recognized that the continuing violation doctrine may apply to hostile work environment claims governed by the one-year limitations period e § 3813(2-b) establishes. *See Owens v. N.Y.C. Dep't of Educ.*, No. 17-CV-519 (SHS), 2021 WL 3862974, at 8* (S.D.N.Y. Aug. 30, 2021) (recognizing the continuing violation doctrine as an exception to the one-year limitations period applicable to NYSHRL claims under § 3813(2-b)).

Moreover, courts have applied the continuing violation doctrine in determining the timeliness of an application for leave to serve a late notice of claim under Education Law § 3813(2-a). *See Thomas v. City of New York*, 65 Misc. 3d 1223(A), 119 N.Y.S.3d 701 (Sup. Ct. Kings Cnty. 2019) (applying the continuing violation doctrine to a hostile work environment claim and granting leave to serve a late notice of claim).

Accordingly, accepting plaintiff's allegations for purposes of the present motion, the Court concludes that the June 18, 2025, termination constituted the final act contributing to the alleged hostile work environment. Because plaintiff moved for leave to serve a late notice of claim on June 17, 2026, within one year of that act, her application is timely with respect to her hostile work environment claim.

3. **Timeliness of Plaintiff's Failure-to-Accommodate Claim**

Plaintiff alleges that defendants failed to provide a reasonable accommodation for her disability. Under the NYSHRL, an employer's refusal to provide reasonable accommodations for an employee's known disability can constitute an unlawful discriminatory practice. N.Y. Exec. Law § 296(3)(a). An employer's rejection of a requested reasonable accommodation is generally considered a discrete discriminatory act rather than a continuing violation. *See Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134-35 (2d Cir. 2003). Accordingly, the Court must determine when the District allegedly denied plaintiff's requested accommodation.

On May 27, 2025, plaintiff formally requested permission to work remotely based on medical documentation recommending that she work from home because of her vision difficulties. On May 28, 2025, Superintendent Kardash responded in writing, requesting additional medical documentation and proposing a meeting to discuss

whether plaintiff had a qualifying disability and what accommodations might be appropriate. Although plaintiff characterizes this response as an improper refusal to engage in the interactive process, the May 28 letter did not expressly deny her requested accommodation. Rather, it proposed further discussion concerning her disability and potential accommodations. According to plaintiff, the District did not ultimately refuse her request to work remotely until June 17, 2025, when Kardash denied remote work and offered a temporary paid leave of absence instead. The Court therefore finds, for purposes of the present motion, that the alleged June 17 refusal constituted a discrete discriminatory act giving rise to plaintiff's failure-to-accommodate claim.[2] Because plaintiff filed her application for leave to serve a late notice of claim on June 17, 2026, exactly one year after that alleged denial, her application is timely with respect to the failure-to-accommodate claim arising from that decision.

### C. **The Discretionary Factors Favor Granting Plaintiff's Motion**

Having determined that plaintiff's application is timely, the Court turns to whether the relevant factors warrant granting leave to serve a late notice of claim under Education Law § 3813(2-a). In exercising its discretion, the Court considers all relevant facts and circumstances, including whether the District acquired actual knowledge of the essential facts constituting the claims within the statutory period or a reasonable time thereafter, whether the delay substantially prejudiced the District's ability to defend against the claims, and whether plaintiff has demonstrated a reasonable excuse for the

---

[2] Although defendants contend that plaintiff's June 4, 2025, demand letter establishes that all of her NYSHRL claims accrued before that date, the Court disagrees. Plaintiff's identification and assertion of disability discrimination and failure-to-accommodate claims by June 4 does not preclude a separate, actionable violation arising from the District's June 17, 2025, denial of her requested accommodation. Accordingly, the June 4 letter does not establish that plaintiff's claim arising from the June 17 denial is untimely.

delay. *See Matter of Newcomb v. Middle Country Cent. Sch. Dist.*, 28 N.Y.3d 455, 461 (2016); *Bucalo,* 351 F. Supp. 2d at 36 (citing N.Y. Educ Law § 3813(2-b)). With respect to substantial prejudice, the claimant bears the initial burden of presenting some evidence or plausible argument demonstrating that late notice would not substantially prejudice the public corporation. *See Newcomb*, 351 F. Supp. 2d at 466. Once the claimant makes that showing, the burden shifts to the public corporation to demonstrate substantial prejudice through a particularized evidentiary showing. *See id.* at 467. Mere speculation or the passage of time, without evidence of actual impairment to the public corporation's ability to defend the claim, is insufficient. *See id.* at 466-67.

Here, plaintiff contends that the District had actual knowledge of the essential facts underlying her NYSHRL claims because her counsel's detailed June 4, 2025, letter identified the alleged discriminatory conduct, the individuals involved, and the legal bases for her claims. Plaintiff further argues that the District engaged in subsequent settlement discussions and submitted a detailed position statement in response to her EEOC charge, demonstrating its ability to investigate and defend against the allegations. Significantly, defendants expressly decline to contest plaintiff's assertions concerning actual knowledge, the absence of substantial prejudice, and the equitable considerations favoring relief. *See* Dkt. No. 24 at 1, 3. Instead, defendants oppose the motion principally on timeliness grounds, which the Court has already rejected. Accordingly, the Court finds that plaintiff has made the requisite initial showing of an absence of substantial prejudice, and defendants have offered no particularized evidentiary showing to the contrary. *See Newcomb*, 28 N.Y.3d at 466-67.

Although defendants correctly observe that plaintiff has not offered a reasonable excuse for failing to timely serve a notice of claim, that deficiency does not require denial of her application. Courts have recognized that the absence of a reasonable excuse is not fatal where the public corporation possessed actual knowledge of the essential facts underlying the claims and would not suffer substantial prejudice from the delay. *See Matter of Trotman v. Rochester City Sch. Dist.*, 67 A.D.3d 1484, 1485, 889 N.Y.S. 2d 359 (N.Y. App. Div. 2009) (granting leave to serve a late notice of claim notwithstanding the failure to offer a reasonable excuse because school district had actual knowledge of underlying facts and was not substantially prejudiced by delay).

Here, given the District's contemporaneous knowledge of plaintiff's allegations, the absence of demonstrated substantial prejudice, and defendants' decision not to contest the remaining discretionary factors, the Court concludes that plaintiff's failure to provide a reasonable excuse does not outweigh the considerations favoring relief. Accordingly, upon consideration of all relevant facts and circumstances, the Court exercises its discretion under Education Law § 3813(2-a) to grant plaintiff leave to serve a late notice of claim with respect to the claims determined to be timely.

## V. **CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED**, that plaintiff's motion for leave to serve a late notice of claim under New York Education Law §3813(2-a) in connection with her NYSHRL claims, dkt. no. 2, is **GRANTED**.

**IT IS SO ORDERED.**

Dated: October 30, 2026
Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge